UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| CHRISTINE KRIPS,<br><br>    Plaintiff,<br><br>vs.<br><br>JO ANNE B. BARNHART, etc.,<br><br>    Defendants. | 2:05-cv-594-PMP-RJJ<br><br>REPORT & RECOMMENDATION<br>OF UNITED STATES<br>MAGISTRATE JUDGE<br>(Motion for Reversal and/or<br>Remand (#17)) |

This matter was referred to the undersigned Magistrate Judge on Plaintiff's Motion for Reversal and/or Remand (#12). The Court has considered Plaintiff's Motion (#12), Defendant's Cross-Motion for Affirmance and Opposition (#14), and Plaintiff's Reply (#17), as well as, the Administrative Record (#10).

## BACKGROUND

### I. ADMINISTRATIVE PROCEEDINGS

This case arises out of the denial of social security benefits to Plaintiff/Claimant, Christine Krips. Krips applied for supplemental social security income on January 14, 2002, alleging fibromyalgia and fibrositis, depression, panic attacks, sleep disturbance, peptic ulcer disease, chronic sinusitis, chronic pain, and chronic fatigue. Krips' administrative hearing was held in Las Vegas, Nevada, on September 8, 2003, by Administrative Law Judge (ALJ) Steinman. Krips, represented by counsel, personally appeared and testified at the hearing. Additionally, a vocational expert and a medical expert testified at the hearing.

ALJ Steinman issued his decision on January 23, 2004 denying Krips' claim for benefits,

finding that she did not suffer a severe physical impairment but did suffer from a severe mental impairment that left her with a residual functional capacity to perform simple repetitive work without exposure to the general public.  Record (#10) at 296.  Krips appealed.  The Appeals Council denied the request for review on March 9, 2005.  Record (#10) at 5.  At that time, the ALJ's decision became the final agency decision in this matter.  Plaintiff Krips filed the present action on May 6, 2005.

## II.  FACTS

Krips was born on December 20, 1951, and was 51 years old at the time of the hearing in 2003.  Record (#10) at 70.  Krips completed a high school education and has completed training at beauty school.  Record (#10) at 88.  She has worked primarily as a manicurist prior to her alleged disability.  Record (#10) at 20.  Krips has not worked since the alleged disability onset date of January 14, 2002.  Record (#10) at 21.

At the time of the hearing, Krips received general relief and food stamps.  Record (#10) at 156 & 312.  Krips testified that at the time of the hearing she did not have a permanent residence. Record (#10) at 310.  However, Krips has a license and drives a car that she borrows from a friend to get to her appointments.  Record (#10) at 312.

Krips alleges that she suffers from fibromyalgia, depression, panic disorder, a sleep disorder, peptic ulcer disease, chronic sinusitis, chronic pain, and chronic fatigue.  Krips testified that she is in constant pain, sometimes extreme pain.  Record (#10) at 303.  She claims that her fingers cannot grip or grasp well because her hands always burn, feeling as though somebody injected her veins with boiling water.  Record (#10) at 304.  She claims she has pain in her spine that goes down her lower back, left leg, and into her toes.  Record (#10) at 304.  She claims the pain is also in both arms and her shoulders.  Record (#10) at 304.  Krips testified that she is constantly fatigued.  Record (#10) at 305.

The morning of the hearing Krips stated that it took her six hours to get ready because she had to stop and sit down and rest after doing a five minute activity.  Record (#10) at 306.  Her rests are usually half an hour or an hour long.  Record (#10) at 307.  Krips further testified that she can sit for only about twenty minutes at a time and stand for approximately five minutes.

1  Record (#10) at 316.  She testified that she can only walk about a block because she gets really
2  tired and her legs and back hurt.  Record (#10) at 317.
3        Krips is currently taking Zoloft, Zyprexa, and Benadryl.  Record (#10) at 310.  Krips
4  testified that she is not currently being cared for by a psychiatrist because she has no money and
5  no insurance.  Record (#10) at 311.  She further testified that she has difficulty concentrating.
6  Record (#10) at 311.  Krips stated that she hears voices.  Record (#10) at 313-14.  Krips also
7  believes that her mother is trying to kill her.  Record (#10) at 314.  Krips testified that she sees
8  insects all over her body.  Record (#10) at 314.
9        Krips contends that she was wrongly denied social security benefits given her condition
10 and inability for employment.   Specifically, she asserts that the ALJ erred in his decision
11 denying  disability benefits for the following reasons:
12     1.    The ALJ erred in finding that she did not suffer from a severe physical
13         impairment;
14     2.    The ALJ failed to fully and fairly develop the record in assessing her mental impairment; and
15
16     3.    The ALJ failed to properly evaluate her subjective complaints.
17 **DISCUSSION**
18 **I.  STANDARD OF REVIEW**
19       The Court may set aside the Commissioner's findings "if they are based on legal error or
20 are not supported by substantial evidence."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.
21 1998), (citing Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)).  "Substantial evidence
22 means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a
23 reasonable mind might accept as adequate to support a conclusion."  Andrews v. Shalala, 53 F.3d
24 1035, 1039 (9th Cir. 1995).  "In determining whether the Commissioner's findings are supported
25 by substantial evidence, [the court will] review the administrative record as a whole, weighing
26 both the evidence that supports and the evidence that detracts from the Commissioner's
27 conclusion."  Reddick, 157 F.3d at 720 (citing Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir.
28 1989)).  If the evidence can reasonably support more than one rational interpretation, the Court

may not substitute its judgment for that of the Commissioner, and must uphold the decision.  See Reddick, 157 F.3d at 720-21 (citation omitted); Andrews, 53 F.3d at 1039-40.

## II. DISABILITY STANDARDS AND FINDINGS

To be considered "disabled" under the Social Security Act, a person must show that he or she is unable to engage in any substantial gainful work due to a medical condition, physical or mental impairment, which has lasted, or is expected to last, for at least twelve continuous months.  42 U.S.C. § 423(d)(1)(A).  The condition must be severe enough to prevent a person from working in his or her usual job and any other gainful work, and the medical condition must be disabling at a time when the person meets the specified earnings requirement.  42 U.S.C. § 423.  A person's age, education, training and work experience are taken into consideration.  Id.

Disability claims are evaluated according to a sequential five-step process.  20 C.F.R. § 404.1520 (2002);[1] Reddick, 157 F.3d at 721; Baxter v. Sullivan, 923 F.2d 1391, 1395 (9th Cir. 1991).  The ALJ must determine whether: (1) the person is working and currently engaged in substantial gainful activity; (2) the person has an impairment that significantly limits his or her physical or mental ability to do basic work activities, thereby constituting a "severe impairment;" (3) the person's impairment or combination of impairments meets or equals a listed impairment in Appendix 1 and meets the duration requirement; (4) the impairment prevents the person from doing past relevant work; and (5) the impairment prevents the person from doing any other work, considering his or her residual functioning capacity, age, education, and past work experience.  20 C.F.R. § 404.1520(b) - (f).  If a claimant is found disabled or not disabled at any step in the evaluation process, the review process will not proceed further.  Id.  During the evaluation process, the burden of proof remains with the claimant until step five, where it then shifts to the Commissioner.  Reddick, 157 F.3d at 721 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

ALJ Steinman made the following findings in his decision:

1. The claimant has not engaged in substantial gainful activity since January 14, 2002.

---

[1] All citations herein to the Code of Federal Regulations are to the 2002 edition.

- 4 -

2. The medical evidence establishes that the claimant has severe depressive disorder, NOS. Her physical impairments are not severe. She does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

3. Pursuant to the law of the Ninth Circuit Court of Appeals, Social Security Rulings 96-3p, 96-4p, and 96-7p, and pertinent regulations, the claimant's allegations of the degree of her impairments and limitations are rejected as not credible for the clear and convincing reasons discussed above.

4. The claimant has the residual functional capacity to perform simple repetitive tasks in nonpublic settings with minimal interaction with coworkers. There are no exertional limitations (20 CFR 416.945).

5. The claimant is unable to perform her past relevant work as a manicurist.

6. The claimant is 51 years old, which is defined as approaching advanced age (20 CFR 416.963).

7. The claimant has a high school education (20 CFR 416.964).

8. The claimant does not have any acquired work skills, which are transferable to the skilled or semiskilled work functions of other work (20 CFR 416.963).

9. Based on an exertional capacity for light work and the claimant's age, education, and work experience, section 416.969 of Regulations No. 16 and Rule 202.13, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

10. The vocational expert, Barbara Misik, opined that, even if restricted to the performance of light work exertionally, the claimant would be able to perform other jobs existing in significant numbers in the national economy, considering her residual functional capacity and vocational profile. The vocational expert testified that, of the 1,400 light job titles administratively noticed by the Commissioner's Regulations at Appendix 2 to Subpart P of Regulations No. 4, the claimant could perform 400 such jobs, including: janitorial (DOT 323.687-014, 6,000 in Los Angeles County, 200,000 nationally); hand packager (DOT 920.685-082, 30,000 in Los Angeles County, 320,000 nationally); and assembler (DOT 780.684-062, 25,000 in Los Angeles County, 600,000 nationally).

11. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 416.920(f)).

Record (#10) at 25-26.

As applied to the sequential evaluation process, the ALJ found that the claimant: (1) is not engaged in substantial activity; (2) has severe depressive disorder, NOS, and has physical impairments that are "not severe;" (3) does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1; (4) is unable to perform her past relevant work; and (5) has the residual functional capacity to perform simple repetitive tasks

in nonpublic settings with minimal interaction with coworkers and no exertional limitations. Record (#10) at 25-26. The ALJ concluded Plaintiff is not disabled or under a disability and denied benefits accordingly. Record (#10) at 26.

**A. Physical Impairment**

The ALJ determined that Krips "has the residual functional capacity to perform simple repetitive tasks in nonpublic setting with minimal interaction with coworkers." Record (#10) at 25. The ALJ's determination was based, in part, on the fact that in step two of the evaluation process he determined that Krips does not suffer from a severe physical impairment. The plaintiff alleges that the ALJ's decision is indicative of an extreme lack of medical understanding of the debilitating effect of fibromyalgia. However, the ALJ determined that the plaintiff does not have fibromyalgia. Plaintiff alleges that the ALJ's conclusion that she does not suffer from a severe physical impairment is not supported by substantial evidence.

In order to determine if the ALJ's decision was supported by substantial evidence, the Court must analyze the symptoms and signs of the plaintiff's alleged physical disabilities. Plaintiff alleges that she suffers from fibromyalgia and chronic fatigue syndrome.

> There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and - - the only symptom that discriminates between it and other diseases of a rheumatic character - - multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch. All these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch.

Sarchet v. Chater, 78 F.3d 305, 306-07 (7th Cir. 1996).

In this case, the ALJ determined that the plaintiff does not suffer from fibromyalgia based on the lack of evidence of the 11 trigger points in Plaintiff's medical records. It does not appear from the record that the ALJ considered the alleged disability of chronic fatigue syndrome. This is problematic because the Social Security Ruling states that

> [t]here is considerable overlap of symptoms between [chronic fatigue syndrome] CFS and Fibromyalgia Syndrome (FMS), but individuals with CFS who have tender points have a medically determinable impairment. Individuals with impairments that fulfill the American College of Rheumatology criteria for FMS (which includes a minimum number of tender points) may also fulfill the criteria for CFS. However,

individuals with CFS who do not have the specified number of tender points to establish FMS, will still be found to have a medically determinable impairment.

SSR 99-2p: Policy Interpretation Ruling, 1999 SSR LEXIS at *8 n.3.

Here, although the plaintiff may not have the requisite number of trigger points for a diagnosis of Fibromyalgia she may have the requisite symptoms for chronic fatigue syndrome. Since this claim was filed in 2002 and the claim is premised on Fibromyalgia and Chronic Fatigue Syndrome, it should have been evaluated based in part on the Social Security Ruling provided by the Secretary in 1999. The interpretation provides:

> [Chronic Fatigue Syndrome] CFS is a systemic disorder consisting of a complex of symptoms which may vary in incidence, duration, and severity. It is characterized in part by prolonged fatigue that lasts 6 months or more and that results in substantial reduction in previous levels of occupational, educational, social, or personal activities.
>
> . . . [T]he current CDC definition of CFS requires the concurrence of 4 or more of the following symptoms, all of which must have persisted or recurred during 6 or more consecutive months of illness and must not have pre-dated the fatigue:
>
> * Self-reported impairment in short-term memory or concentration severe enough to cause substantial reduction in previous levels of occupational, educational, social, or personal activities;
> * Sore throat;
> * Tender cervical or axillary lymph nodes;
> * Muscle pain;
> * Multi-joint pain without joint swelling or redness;
> * Headaches of a new type, pattern, or severity;
> * Unrefreshing sleep; and
> * Postexertional malaise lasting more than 24 hours.
>
> . . .
>
> The following medical signs and laboratory findings establish the existence of a medically determinable impairment in individuals who have CFS. . . . [T]he medical criteria discussed below are only examples of signs and laboratory findings that will establish the existence of a medically determinable impairment; they are not all-inclusive. . . .
>
> For purposes of Social Security disability evaluation, one or more of the following signs clinically documented over a period of at least 6 consecutive months establishes the existence of a medically determinable impairment for individuals with CFS:
>
> * Palpably swollen or tender lymph nodes on physical examination;
> * Nonexudative pharyngitis;
> * Persistent, reproducible muscle tenderness on repeated examinations, including the presence of positive tender points; or,

- 7 -

    * Any other medically accepted clinical practice and are consistent with the other evidence in the case record.

SSR No. 99-2p: Policy Interpretation Ruling, 1999 SSR LEXIS 3.  Further, "CFS is accompanied by symptoms such as body aches, low-grade fevers, memory problems, headaches, and extended flu-like symptoms[.]" Reddick, 157 F.3d at 726.

  It appears from the record that the plaintiff may suffer from chronic fatigue syndrome. Krips' medical records indicate reproducible muscle tenderness including the presence of positive tender points.  Krips also suffers from memory problems.  Krips suffers from joint pain without joint swelling.  Further, there are multiple examinations where Krips suffered from a sore throat.  The ALJ did not properly assess whether or not Krips suffers from chronic fatigue syndrome.

  Once it is determined that an individual has a medically determinable impairment, the severity of the impairment must be established.  SSR No. 99-2p: Policy Interpretation Ruling, 1999 SSR LEXIS 3 at *10.  Once a medically determinable impairment has been found to exist, the adjudicator must consider that the impairment could reasonably be expected to produce symptoms associated with chronic fatigue syndrome.  Id. at *11.  The adjudicator then must evaluate the intensity and persistence of the symptoms.  Id.  "Generally, evidence for the 12-month period preceding the month of application should be requested unless there is reason to believe that development of an earlier period is necessary[.]" Id. at *18.  In the present case, the plaintiff provided medical records dating back to 1994.  Since the symptoms of fibromyalgia and chronic fatigue syndrome are mostly subjective, these records would be useful.  Further, the ALJ and this Court are required to evaluate the record in its entirety.

  The ALJ premised his conclusion that Krips does not have a severe physical impairment based on the reports of Dr. Borigini, a board-certified rheumatologist, as well as the testimony of Dr. Steiner, an internist.  Dr. Steiner's opinion was "that the longitudinal medical evidence of record does not support a diagnosis of fibromyalgia" and "that the evidence of record does not reflect ongoing clinical signs or laboratory findings consistent with any severe medically determinable physical impairments or combination of impairments."  Record (#10) at 21.  Dr.

- 8 -

Borigini conducted an exam of the plaintiff and concluded that Krips suffered from chronic pain syndrome; however, he stated that her impairments were not severe and did not result in any significant work related limitations. Report (#10) at 21. Although the claimant's physical examination did disclose diffuse soft tissue tenderness of the arms and legs and diffuse soft tissue tenderness of the back, Dr. Borigini did not find that Krips suffered from fibromyalgia or chronic fatigue syndrome. See Report (#10) at 21. Instead, he diagnosed her with chronic pain symptoms.

However, Krips contends that Dr. Malayan is a "treating physician." The court finds that Dr. Malayan is a "treating physician" under the Regulations, and therefore, his opinion must be given "controlling weight" under 20 C.F.R. § 404.1527(d)(2) unless it is not consistent with other substantial evidence in the record. A "treating source" is defined as the claimant's "own physician or psychologist who has provided [the claimant] with medical treatment or evaluation and who has or has had an ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1502. In determining an "ongoing treatment relationship," the ALJ looks to medical evidence that establishes that the claimant has been seen by the physician "with a frequency consistent with accepted medical practice for the type of treatment and evaluation required for [the claimant's] medical condition(s)." Id.

Generally, if . . . a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence . . . [it will be given] controlling weight." 20 C.F.R. § 404.1527(d)(2). If a "treating source" is not given "controlling weight," the weight accorded to the opinion will depend on the amount of evidence supporting the opinion, length of treatment and frequency of exams, the degree to which an explanation is provided for an opinion, the consistency with the record as a whole, and the specialization of the source. 20 C.F.R. § 404.1527(d). Further, "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 404.1527(e)(1). However, "[b]ecause treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are

- 9 -

given greater weight than the opinions of other physicians." Smolen, 80 F.3d at 1285 (citations omitted); see also Reddick, 157 F.3d at 725 (citation omitted) ("The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant.").

In the present case, it is clear that the ALJ did not give Dr. Malayan's opinion controlling weight. The ALJ determined that there was substantial inconsistent evidence and evaluated the treating source based on the other factors in the regulations. The ALJ discredited Dr. Malayan's opinion based in part on the fact that he is not specialized in rheumatology. See Defendants Motion (#14) at 4: 1-8. Further, the ALJ noted the inconsistent testimony of Dr. Steiner, who determined that the medical evidence of record did not support a diagnosis of fibromyalgia. Report (#10) at 21. The ALJ further found that although Dr. Malayan diagnosed the claimant with fibromyalgia, his diagnosis was not supported by ongoing associated findings, signs, and/or symptoms. Report (#10) at 21. The ALJ examined the plaintiff's medical history based on the testimony of Dr. Steiner and found numerous examinations where there were no complaints indicative of fibromyalgia symptoms nor treatment for the disorder. Report (#10) at 21.

The Court finds that the ALJ's findings were not supported by substantial evidence in the record, nor consistent with the Social Security Policy Interpretation for determining whether an individual suffers from chronic fatigue syndrome. The policy interpretation specifically states what an adjudicator should do if the evidence in the record is inadequate or a clarification is necessary in order to determine a disability.

> If the adjudicator finds that the evidence is inadequate to determine whether the individual is disabled, he or she must first recontact the individual's treating or other medical source(s) to determine whether the additional information needed is readily available, in accordance with 20 CFR 404.1512 and 416.912. Only after the adjudicator determines that the information needed is not readily available from the individual's health care provider(s), or that the necessary information or clarification cannot be sought from the individual's health care provider(s), should the adjudicator proceed to arrange for a consultative examination(s) in accordance with 20 CFR 404.1519a and 416.919a. . . . It should be noted that conflicting evidence in the medical record is not unusual in cases of CFS due to the complicated diagnostic process involved in these cases. Clarification of any such conflicts in the medical evidence should be sought first from the individual's treating or other medical sources.

SSR No. 99-2p: Policy Interpretation Ruling, 1999 SSR LEXIS 3 at *18-19.

1   Since Dr. Malayan can be considered a "treating physician," his opinion may be rejected
2   only for "clear and convincing" reasons supported by substantial evidence in the record, where
3   the opinion is not contradicted by another doctor. Reddick, 157 F.3d at 725 (citing Lester, 81
4   F.3d at 830). If a treating doctor's opinion is contradicted, the ALJ cannot reject the opinion
5   without giving "specific and legitimate reasons" supported by substantial evidence in the record.
6   Id. The same standard applies to rejection of a doctor's opinion regarding disability as to
7   rejection of a doctor's medical opinion. Id.

8   In this case, the opinion of Dr. Malayan, as to the diagnosis of fibromyalgia, was
9   contradicted by the testimony of Dr. Steiner and the consultation done by Dr. Borigini. However,
10  when determining whether an individual suffers from a disability caused by chronic fatigue
11  syndrome, the ALJ should have first contacted the treating physician, Dr. Malayan, to resolve any
12  issues that needed clarification. In this case, especially considering the overlap between the two
13  disorders and the fact that the claimant alleged chronic fatigue syndrome, the treating physician
14  should have been contacted.

15  Krips clearly sought out treatment for her impairments from Dr. Malayan from the period
16  of 1997 to 2003. See Record (#10) at 129-145 & 196-209. The record establishes that although
17  infrequent, Krips was given trigger point injections consistent with a diagnosis of chronic fatigue
18  syndrome or fibromyalgia. Report (#10) at 132 & 133. Further, there were numerous
19  examinations where Krips reported pain in trigger points. See Report (#10) at 132, 133, 134,
20  135, 139, & 145. At times, Dr. Malayan mentions trigger points but does not state in the medical
21  record the quantity. Dr. Malayan would have been the appropriate source to clarify the number
22  of trigger points detected.   Further, in 1996 Dr. Babajanians also diagnosed the plaintiff with
23  chronic arthralgia and myalgia, and arthralgia fibromyalgia. See Record (#10) at 113. Although,
24  the ALJ articulated specific reasons for rejecting Dr. Malayan's diagnosis of fibromyalgia, it is
25  not supported by substantial evidence. The ALJ did not give specific reasons for rejecting the
26  alleged chronic fatigue syndrome, nor did he follow the policy interpretation ruling for doing so.

27  Dr. Malayan stated that the plaintiff is disabled both physically and mentally in a letter
28  dated April 5, 2003. Report (#10) at 207. Despite Dr. Steiner's testimony being more in depth

on the issue of fibromyalgia than Dr. Malayan's letter and medical records, Dr. Malayan's records and letter should have been accorded more weight by the ALJ. Dr. Malayan treated Krips most recently and on a regular basis, while Dr. Borigini, although specialized in rheumatology, saw Krips only once. The ALJ rejected Dr. Malayan's opinion because he felt that Dr. Malayan diagnosed the claimant as disabled merely because he was "concerned with the claimant's homelessness." Record (#10) at 23. This conclusion is not supported by substantial evidence. "[T]he purpose for which an opinion is provided, is not a legitimate basis for evaluating the reliability of the report." Reddick, 157 F.3d at 726. Given that the examination given by Dr. Borigini was not inconsistent with Dr. Malayan's diagnosis, a diagnosis of chronic pain symptoms, there is no reason why the ALJ should have rejected Dr. Malayan's opinion. In this case, since chronic fatigue syndrome and fibromyalgia are difficult to diagnose with few objective signs, it is not surprising that the claimant was not diagnosed with the disorder upon one examination. This is precisely why the policy interpretation ruling instructs the ALJ to first consult the treating physician regarding necessary additional evidence and/or clarifications. The ALJ did not follow the proper procedure, nor are his reasons supported by substantial evidence in the record.

### B. Mental Impairments

The plaintiff contends that she has a more restrictive mental residual functional capacity than that found by the ALJ. The ALJ relied on evidence supplied by Dr. Edelman, a consultative examiner and the state agency reviewing physician, Dr. Borigini, to determine Krips' RFC. Record (#10) at 21-22. The ALJ found that Krips "would merely have moderate difficulty interacting with the public, and would have difficulty, based upon her self-report, in terms of understanding, remembering, and following complex instructions." Record (#10) at 22. Plaintiff Krips argues that the ALJ did not accord sufficient weight to her formal mental health treatment that was rendered subsequent to the opinions of Drs. Edelman and Borigini.

Krips contends that the ALJ did not fully develop the record and had an affirmative duty to recontact the treating psychiatrist to determine the extent of her limitations and whether they are expected to last for the durational requirement of twelve months. The ALJ does have a

"special duty" in Social Security cases "to fully and fairly develop the record and to assure that the claimant's interests are considered." Smolen, 80 F.3d at 1288 (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). "This duty exists even when the claimant is represented by Counsel." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983).

In this case, the ALJ determined that Krips' mental problems were the result of her homelessness and would not last for the twelve month durational requirement. The Court finds that this conclusion was not based on substantial evidence in the record. To the contrary, Krips' most recent psychiatric evaluation indicated that she would not be able to function in a working environment. The ALJ had an affirmative duty to further develop the record to determine if the symptoms would last for the durational period. Further, the ALJ noted that the claimant was not currently taking mental health medications, (Record (#10) at 22), as discussed below a lack of treatment if explained is not a sufficient basis to reject a claim.

### C. Credibility of Plaintiff and Subjective Complaints

In step five of the evaluation process, the ALJ is required to determine whether the impairment prevents the person from doing any other work, considering his or her residual functioning capacity, age, education and past work experience. 20 C.F.R. § 404.1520(f)(1). If the person cannot do any other work, the person is considered disabled. Id. Plaintiff contends that the ALJ improperly discounted her subjective symptoms without substantial reasons for doing so. Krips argues that the ALJ failed to articulate acceptable reasons for discrediting her testimony as there were no conflicts between the testimony and Krips' conduct, nor any internal contradictions in her testimony.

Residual functional capacity is what a person can do despite his or her limitations. 20 C.F.R. § 404.1545(a). To determine residual functional capacity, the ALJ examines the claimant's "impairment(s) and [ ] related symptoms, such as pain, [that] may cause physical and mental limitations" affecting claimant's abilities in a work setting. Id. The assessment "may include descriptions [even the claimant's own] of limitations that go beyond the symptoms, such as pain, that are important in the diagnosis and treatment of [the] medical condition." Id. The ALJ makes "an assessment based on all the relevant evidence" and considers the claimant's

"ability to meet certain demands at jobs, such as physical demands, mental demands, sensory requirements, and other functions[.]" Id.  This includes consideration of the total limiting effects of the claimant's impairments, "even those that are not severe[.]" 20 C.F.R. § 404.1545(e).

The Regulations further define residual functional capacity as the "'maximum degree to which the individual retains the capacity for *sustained* performance of the physical-mental requirements of jobs.'" Reddick, 157 F.3d at 724 (quoting 20 C.F.R. 404, Subpt. P, App. 2 § 200.000© (emphasis added in Reddick)). The Commissioner "must evaluate the claimant's 'ability to work on a sustained basis.'" Id. (quoting 20 C.F.R. § 404.1512(a); Lester, 81 F.3d at 833).  This evaluation includes determination of residual functional capacity for "work activity on a regular and continuing basis." Id. (quoting 20 C.F.R. § 404.1512(b)).  Sporadic ability to work and occasional symptom-free periods are not inconsistent with disability.  Id. (citing Lester, 81 F.3d at 833).

The ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Reddick, 157 F.3d at 722 (citing Andrews, 53 F.3d at 1039).  However, such findings by the ALJ must be "supported by specific, cogent reasons. . . . Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." Id. (citations omitted). "An ALJ may not reject a claimant's allegations of pain without making specific findings." Baxter, 923 F.2d at 1396 (citation omitted).  Further, an ALJ's conclusory evaluation of a claimant's pain is indicative that the record does not demonstrate such findings are supported by substantial evidence. Id. Specifically, "[u]nless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'" Reddick, 157 F.3d at 722 (citing Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) and Swenson, 876 F.2d at 687).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick, 157 F.3d at 722 (citations omitted).

In the instant case, the ALJ's finding that Krips has the residual capacity for other gainful

activities in the national economy is not supported by the record. The ALJ stated in his decision that the plaintiff's "physical impairments, chronic pain symptoms and musculoskeletal symptomatology, are not severe, imposing no more than de minimis limitations." Record (#10) at 24. The ALJ did not explain how Krips would achieve job performance on a sustained basis, in light of her testimony as to how her pain affects her ability to perform basic tasks such as getting dressed, brushing her teeth, getting out of the house, and daily hygiene. To the contrary, the vocational expert and the ALJ recognized that if Krips' testimony were believed, she would not be able to work in any job. Record (#10) at 324. The ALJ did not specifically state what testimony he did not believe to be credible. The ALJ simply relied on the statements of the state agency program physicians and the consultative examining physician that Krips' physical impairments were not severe, the sporadic treatment, the lack of intensive pain therapy, and the fact that she is able to drive to her appointments. Record (#10) at 24. Krips' testimony of her limited ability to perform even menial tasks in her daily routine is consistent with the impairment of chronic fatigue syndrome. The fact that the ALJ did not properly evaluate whether or not Krips' suffered from chronic fatigue syndrome, indicates that he did not adequately evaluate her subjective complaints.

The ALJ cited to gaps in Krips' medical treatment and lack of injections, in support of his decision. Record (#10) at 24. "Where a claimant provides evidence of a good reason for not taking medication for [her] symptoms, [her] symptom testimony cannot be rejected for not doing so." Smolen, 80 F.3d at 1284. However, to the contrary, where a "failure to seek treatment or follow a prescribed course of treatment" is either unexplained or inadequately explained, the lack of treatment "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). In this case, the plaintiff stated that she has tried various anti-depressant medication to control her physical pain but has been unable to tolerate them. Record (#10) at 154. Plaintiff stated that she has not had money or insurance to get treatment by a psychiatrist. Record (#10) at 311. Further, the evidence in the record indicates that the plaintiff has had a long history of treatment for her chronic pain. Dr. Steiner testified that the records indicate that the plaintiff is getting trigger point injections about twice a year, sometimes three

times a year. Record (#10) at 318 & 320. Plaintiff's treating physician determined what treatment should be prescribed; therefore, the ALJ should have questioned the treating physician to clarify the gaps in treatment rather than disregarding Plaintiff's testimony.

The ALJ never pointed to any affirmative evidence that Krips is malingering, but rather to a medical report by Dr. Steiner, who never even examined Plaintiff, stating that the pain complaints were excessive. Record (#10) at 21. This kind of general observation is insufficient to discount Plaintiff's credibility. Therefore, the ALJ provided unsatisfactory reasons for discounting Plaintiff's credibility. Neither the ALJ's decision nor the medical reports provided support for the conclusion that Plaintiff is *physically* capable of work on a regular and continual basis. Krips testified that she has difficulty walking, standing and sitting for extended periods of time, i.e. more than one block, five minutes, and twenty minutes, respectively. Record (#10) at 316-17. These difficulties surely impede her physical ability to achieve sustained performance in a work environment.

## **CONCLUSION**

For the foregoing reasons, this Court finds that the ALJ's decision, that Plaintiff Krips is not disabled because she is capable of performing simple repetitive tasks in nonpublic settings with minimal interaction with coworkers, is not supported by substantial evidence in the record. The ALJ failed to properly evaluate Dr. Malayan's opinion, failed to properly assess Plaintiff's credibility, and failed to adequately develop the record in regards to Plaintiff's alleged deteriorating mental condition. The Commissioner must properly evaluate Dr. Malayan's opinion as a "treating physician," elicit the testimony of Dr. Malayan as to any gaps or clarifications regarding the allegations of chronic fatigue syndrome, properly assess Plaintiff's credibility specifically relating to her testimony regarding the nature and extent of the pain she experiences, and elicit the testimony of Plaintiff's treating psychiatrist to determine her mental health.

## **RECOMMENDATION**

Based on the foregoing and good cause appearing therefore,

IT IS THE RECOMMENDATION of the undersigned Magistrate Judge that Plaintiff's

Motion for Reversal and/or Remand (#12) be **GRANTED** and further that this case be remanded to the Administrative Law Judge.

IT IS FURTHER RECOMMENDED that Defendant's Cross-Motion for Affirmance (#14) be **DENIED.**

## NOTICE

Pursuant to Local Rule IB 3-2 any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court **on or before March 29, 2007.** The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1086). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991); Britt v. Simi Valley United Sch. Dist., 708 F.2d 452, 454 (9th Cir. 1983).

DATED this   19th   day of March, 2007.

ROBERT J. JOHNSTON
United States Magistrate Judge